IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JACKIE CARTER,

                Plaintiff,                OPINION AND ORDER

  v.

                                           10-cv-510-wmc

DYLAN RADTKE, and JANEL NICKEL,

                Defendants.

---

In a prior opinion, this court granted in part and denied in part defendants Dylan Radtke and Janel Nickel's motion for summary judgment. (10/30/14 Op. & Order (dkt. #93).) Invoking Federal Rule of Civil Procedure 56(f), the court also directed defendants to explain why it should not enter judgment against them on plaintiff Jackie Carter's three remaining claims, all of which relate to defendants' screening and censoring of his outgoing mail and subjecting him to disciplinary actions in retaliation for its content. (*Id*.) Having reviewed defendants' responses, the court will now enter a judgment of liability in Carter's favor on two of those claims: (1) that defendant Radtke censored Carter's mail in violation of his First Amendment rights; and (2) that both defendants retaliated against Carter by subjecting him to disciplinary actions in retaliation for the content of his outgoing mail. The court will decline to enter judgment in Carter's favor on his separate First Amendment retaliation claim based on defendant Radtke's screening of Carter's mail, finding that Radtke has identified a genuine issue of material fact as to whether he was motivated by Carter's earlier complaint of mail tampering or was simply

attempting to investigate Carter's claim in good faith. Instead, the court will allow this claim to be presented to a jury for determination of liability.

As for the proper remedy for the two claims for which the court will enter judgment in Carter's favor, as well as the third claim for which the jury may find in Carter's favor, the court agrees with defendants that the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), precludes an award of compensatory damages absent a showing of physical injury. To date, plaintiff has neither claimed a physical injury, nor to the court's knowledge yet been compelled to come forward with evidence of physical injury. Regardless, plaintiff *is* entitled at least to an award of nominal damages and, at least theoretically, an award of punitive damages to be determined by a jury, along with appropriate declaratory or injunctive relief to be crafted by this court.[1]

## BACKGROUND

As explained at length in its prior opinion, the court denied defendants' motion for summary judgment while providing them an opportunity to identify any remaining, disputed issues of law or fact that would bar entry of a liability judgment as to the following claims:

- against defendant Radtke for screening (including reading) Carter's outgoing mail in retaliation for Carter's filing of a different lawsuit alleging mail tampering;

- against defendant Radtke for censoring Carter's outgoing mail because the censoring of his mail did not further an important or substantial governmental

---

[1] The court would encourage the parties to discuss either: (1) waiving their respective rights to a jury trial; or (2) a settlement as to an appropriate monetary award. Magistrate Judge Peter Oppeneer is available to assist in those discussions.

    interest unrelated to the suppression of expression or is greater than necessary to the protection of the particular governmental interest involved; and

- against defendants Radtke and Nickel for subjecting Carter to disciplinary actions in retaliation for the content of Carter's outgoing mail.

In response, defendants' counsel submitted a legal brief and a factual affidavit by defendant Radtke, which contains several attachments. (Dkt. ##103, 104.) Plaintiff also submitted a response. (Dkt. #106.)

OPINION

Defendants raise several challenges to the court's entry of judgment in favor of plaintiff and also argue that judgment should be entered in favor of defendants on the above-listed claims. The court addresses each argument in turn below.

**I. Screening of Outgoing Mail**

As an initial matter, defendant Radtke claims entitlement to summary judgment with respect to the claim that he screened outgoing mail because: (1) Carter did not pursue this claim in his complaint or opposition to defendants' motion for summary judgment; (2) Carter did not engage in protected conduct; (3) the screening was related to an investigation into Carter's mail tampering allegation and, therefore, was reasonable; and (4) Radtke is entitled to qualified immunity because he acted on the advice of counsel.

While Carter's complaint did not expressly allege that his mail was subjected to special screening, the allegations concerning defendants' reading and censoring of his mail necessarily subsumed a claim related to the screening of his outgoing mail, as best

3

reflected by the fact that *defendants* introduced evidence regarding their screening practices for incoming and outgoing mail as part of their summary judgment motion. Even if defendant Radtke somehow lacked formal notice of the scope of Carter's original claim, the court's summary judgment decision effectively granted leave to Carter to amend his complaint to allege such a claim and expressly extended an opportunity to defendants to respond under Fed. R. Civ. P. 56(f).

Next, defendants contend that Carter's complaints about mail tampering was not protected because plaintiff was attempting "to paint CCI personnel as obstructionists," reasoning that Carter's activity is not protected just as frivolous lawsuits are not protected. (Defs.' Resp. (dkt. #103) 4.) Again, however, defendants admit that they *blocked* plaintiff's outgoing mail and, therefore, Carter's complaints of such actions were not frivolous. Instead, Carter's concerns appear to have been well warranted on this record.

Defendants' third argument, however, has more merit. Defendants contend that the special screening was simply a good faith attempt at investigating Carter's complaints of mail tampering. At summary judgment -- and consistent with an email attached to defendant Radtke's affidavit -- defendants represented that Carter's mail was specially screened "[t]o assist DOJ with a pending court case." (Defs.' Resp. (dkt. #103) 3.) Radtke now appears to argue, however, that the reading of the mail was necessary to investigate Carter's allegations fully. (Defs.' Resp. (dkt. #103) 5 (citing Affidavit of Dylan Radtke ("Radtke Aff.") (dkt. #104) ¶ 9.) This explanation appears to contradict contemporaneous communications reflecting CCI's purported, limited intent to log

4

outgoing mail, but defendants have at least raised a factual issue as to whether Radtke was motivated to screen Carter's mail for the illegitimate purpose of tampering with Carter's mail or by a legitimate, good faith purpose of investigating his claims. However dubious the latter purpose may be, the court, therefore, will allow this claim to proceed to trial for a jury determination of liability.

Finally, defendants seek judgment in their favor on this claim, arguing that that Radtke is entitled to qualified immunity because he was acting on the advice of counsel. (Defs.' Resp. (dkt. #103) 6-7 (citing *Davis v. Zirkelbach*, 149 F.3d 614, 620 (7th Cir. 1998)).) In *Davis*, the Seventh Circuit held that the "extraordinary circumstances doctrine" defined by the United States Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982), *could* cover official acts in reliance on the advice of counsel. 149 F.3d at 620. In making this determination, however, the court adopted certain factors to determine whether "reliance on the advice of counsel rises to the level of extraordinary circumstances," including "how unequivocal, and specifically tailored to the particular facts giving rise to the controversy, the advice was, whether complete information had been provided to the advising attorney(s), the prominence and competence of the attorney(s), and how soon after the advice was received the disputed action was taken." *Id.* (quoting *V-1 Oil Co. v. Wyoming*, 902 F.2d 1482, 1488-89 (10th Cir. 1990)).

Here, while Radtke describes a June 17, 2010, conference call with personnel from the Wisconsin Department of Justice (Radtke Aff. (dkt. #104) ¶ 4), defendants failed to put forth sufficient evidence from which the court could determine that Radtke *was* acting on the advice of counsel, much less whether that advice was sufficiently

5

unequivocal and specifically tailored to Radtke's purported conduct to rise to the level of extraordinary circumstances. On the contrary, the only contemporary evidence -- the email Radtke sent after the conference call -- indicates that the legal advice he received regarded the legality of logging outgoing mail, *not* screening it for content. Radtke's affidavit is equally vague. As such, defendants have failed to demonstrate that Radtke is entitled to qualified immunity on this basis.

**II. Censoring of Outgoing Mail**

This brings us to defendants' principal defense: that they blocked Carter's mail for legitimate purposes. In particular, defendants assert that Carter's attempt to use his legal loan to send out non-legal mail was an abuse of DOC policy. While the court credits this assertion, at least for summary judgment, the record establishes defendants went one step further and blocked him from sending out mail altogether, rather than simply refusing his request to use his legal loan to pay for postage. Defendants also contend that they could have blocked mail that enclosed self-addressed, stamped envelopes because this, too, violates DOC policy. Regardless, it is undisputed that defendants did not censor his letters because they contained self-addressed envelopes. Rather, the letters were censored *because* of its content.

Defendants next argue that Carter was not engaged in protected conduct in writing and mailing these letters because defamation is not protected by the First Amendment. This argument yet again fails to acknowledge the context here. While derogatory content in Carter's letters may not have been protected if it had been

internally communicated within the prison, *outgoing* mail is deserving of greater protection, even letters that "unduly complain," "magnify grievances," or express "inflammatory political, racial, religious or other views" of "defamatory material." *Procunier v. Martinez,* 416 U.S. 396, 413-14 (1974) (internal citations and quotation marks omitted). The court need not, therefore, address this argument, other than by directing defendants to the court's extensive overview of this area of the law in its original opinion and order. (10/30/14 Op. & Order (dkt. #93) 30-33.)

Here, too, defendant Radtke reasserts his qualified immunity defense, arguing that the law is unclear as to the right of inmates to communicate with the outside world by mail under the First Amendment, and that most of the cases cited by the court were decided in other jurisdictions. While the court cited cases from other federal appellate courts in its decision, the overarching rule that "[p]rison officials may not censor [outgoing] inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements" was established over 40 years ago by the United States Supreme Court in *Procunier*, 416 U.S. at 413-14. The court previously rejected defendants' attempt to muddle this area the law (10/30/14 Op. & Order (dkt. #93) 29-30), and finds nothing in defendants' Rule 56(f) response to conclude that applicable law dating back 40 years is now unsettled.

### III. Conduct Reports

In their response brief, defendants offer two bases for arguing that the conduct reports and resulting disciplinary separation would have occurred anyway. *First*,

defendants contend that "Carter had a long reputation for attempting to circumvent CCI and DOC policies," and that Carter specifically used outgoing mail for just this purpose, by circumventing DOC's legal loan policy and policy prohibiting self-addressed, stamped envelopes. Even crediting defendants' overarching characterization of Carter *and* specific instances of violations of prison policies for purposes of summary judgment as the court must, it is *undisputed* that the conduct reports were issued because of his lying about staff in at least one of his outgoing letters, rather than because Carter attempted to circumvent prohibitions on the use of legal loans or enclosing self-addressed, stamped envelopes. Defendants have, therefore, failed to raise a genuine issue of material fact as to whether Carter would have received the same conduct reports and the related disciplinary action, but for his protected conduct in attempting to send outgoing mail.

*Second*, defendants argue that Carter's attempt to gain personal information about Dr. Suliene justified the conduct report. On this point, the court agrees with defendants -- and already found in their favor -- concluding that defendants were justified in blocking the letter seeking personal information about Dr. Suliene and punishing Carter for its content. (10/30/14 Op. & Order (dkt. #93) 34.)

Accordingly, the court will enter judgment in Carter's favor, finding a violation of his First Amendment rights (1) against defendant Radtke for his undisputed censoring of certain outgoing mail based on content; and (2) against defendants Radtke and Nickel based on the undisputed fact that they subjected Carter to disciplinary actions in retaliation for the content of his outgoing mail. As for Carter's claim against defendant Radtke based on the undisputed fact that he subjected Carter's outgoing mail to

screening in retaliation for his submitting a complaint in a separate lawsuit about mail tampering, the court will allow that claim to proceed to trial for a jury determination of liability.

## IV.  Remaining Issues

Defendants alternatively argue that even if the court were to enter judgment in Carter's favor on liability, any relief available is limited to declaratory and injunctive relief.  Defendants are correct that the Prison Litigation Reform Act, 42 U.S.C. 1997e(e), requires a physical injury in order to pursue compensatory damages.  Moreover, this is true even in the First Amendment context.  *See Pearson v. Welborn*, 471 F.3d 732, 744 (7th Cir. 2006) (finding inmate asserting First Amendment retaliation claim failed to demonstrate physical injury sufficient to meet requirements of § 1997e(e)).  Assuming Carter has *no* evidence of physical injury, he can be awarded only nominal damages.  However, Carter has not been required to submit evidence of physical injury to date, and therefore, the court will not close the door to such a claim on summary judgment.

Regardless, Carter *is* entitled to nominal damages of one dollar for the violation of his constitutional rights *and* to the opportunity to pursue punitive damages.  *See Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012) (explaining that a prisoner who did not suffer a physical injury and is therefore barred from pursuing compensatory damages "can still obtain injunctive relief, nominal damages, and punitive damages").  Carter may also

9

be entitled to certain injunctive relief, including expunging the conduct reports at issue from his disciplinary record.[2]

The court will hold a telephonic conference on October 14, 2015, to determine next steps, including setting this case for a jury trial.

ORDER

IT IS ORDERED that:

1) Judgment is entered in plaintiff Jackie Carter and

   a. against defendant Dylan Radtke on plaintiff's First Amendment claim based on the censoring of his outgoing mail; and

   b. against defendant Dylan Radtke and Janel Nickel on plaintiff's First Amendment retaliation claim based on defendant's subjecting plaintiff to disciplinary actions.

2) Plaintiff Jackie Carter is entitled to at least nominal damages in the amount of $1;

3) Plaintiff's motion seeking assistance in filing of criminal charges (dkt. #109) is DENIED; and

---

[2] In recent filings, Carter seeks the court's assistance in filing criminal charges against defendants based on the conduct at issue in this case. (*See* dkt. #109.) Even if defendants' conduct warranted criminal charges, Carter's request falls outside of the scope of this § 1983 lawsuit. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). The power to bring criminal *prosecutions* lies with a county District Attorney or the United States Attorney, *not* the courts. *See United States v. Ribota*, 792 F.3d 837, 840 (7th Cir. 2015) ("The decision whether to prosecute involves consideration of myriad factors such as the enforcement priorities of the office, the determination as to the strength of the case, the prosecutorial resources available, and the prosecution's general deterrence values, and those factors are ill-suited to judicial review."). Accordingly, the court will deny Carter's request.

4) The court will hold a telephonic status conference October 14, 2015, at 9:00 a.m. Counsel for plaintiff is responsible for coordinating call to Chambers at 608-264-5087.

Entered this 18th day of September, 2015.

                            BY THE COURT:

                            /s/

                            _____
                            WILLIAM M. CONLEY
                            District Judge